JAMES H. FAULKNER, Retired Justice.
Chad Winston Griffith, alias Christopher Roderick Arnold, was indicted for the offense of robbery in the first degree, in violation of § 13A-8-41, Code of Alabama 1975. The jury found Griffith guilty as charged in the indictment, and he was sentenced to 20 years in the state penitentiary. Two issues are raised on appeal.
I
Griffith contends that the trial court committed reversible error in overruling his objection to the prosecutor’s closing argument, which exhorted the jury to consider the risks of testifying against a neighbor accused of a crime.
During the defendant’s case, T.J., a 13-year-old girl, testified that she was present with her younger brother when two men robbed a convenience store at gun point and that Griffith was not one of the men involved in the robbery. T.J. further testified that she lived in R.V. Taylor Housing Project and that she had seen Griffith in the neighborhood four or five times before the robbery.
During closing argument by the prosecutor, the following occurred:
“Now, you have her testimony, you have the testimony of the 13-year-old child that got up here and testified, and she told you — basically, she corroborated everything that she had said about the robbery going down, as far as what happened when. She didn’t get a chance to look at them as long as Ms. Hill [the cashier] did, now was she as attentive to them as Ms. Hill was. A 13-year-old in the store, the first time they come in, buy some rolling papers. She is the one waiting on them. The 13-year-old is there with her little brother that she is probably looking after, taking care of. And you can imagine the distractions to a 13-year-old at that age looking after her little brother. Well, when the robbery went down, you can imagine something else, too, in the subconscious of somebody. She lives in this neighborhood with him. You saw her in here. She has got her mother here with her. And they have to go back and live in this neighborhood no matter what happens in this trial. No matter what happens in this trial that little 13-year-old girl is going to go right back into his neighborhood. And if she were to come in here and identify him in any way as being involved, it would not be a good idea for her to go back—
“MR. MADDEN [Defense counsel]: I object, Your Honor. He is implying that the witness is threatened or feels threatened. There was absolutely no testimony as to that.
“THE COURT: Sustained.
“MR. JORDAN: You can use your common sense when you consider a witness’ testimony as to the every day reality of when criminal behavior goes on in a neighborhood, when it’s witnessed by somebody, and the risks, or nonrisks, or the perceived risks, or the ideas and attitudes that anybody would have when testifying against somebody who has just held up somebody with a gun.
“MR. MADDEN: Your Honor, I believe you sustained my objection.
“THE COURT: Well, I think the argument has been retreaded in a slightly different fashion. Overruled.
“MR. JORDAN: And you can consider those things that you know from common sense, every day experience and what you would expect people to think.”
Griffith contends that the prosecutor’s exhortation to the jury to consider the risk of testifying against a neighbor accused of a crime constituted prosecutorial miscon *319 duct because the prosecutor was commenting on facts not in evidence. We disagree.
“While in argument to the jury, counsel may not argue as a fact that which is not in evidence; nevertheless, he may state or comment on proper inferences from the evidence and may draw conclusions from the evidence based upon his own reasoning.... The prosecutor, as does defense counsel, has a right to present his impressions from the evidence.... He may argue every legitimate inference and may examine, collate, sift, and treat the evidence in his own way.... Liberal rules are allowed counsel in drawing inferences from the evidence in their argument to the jury, whether they are truly drawn or not.... Control of closing argument rests in the broad discretion of the trial judge and, where no abuse of discretion is found, there is no error.... The trial judge can best determine when discussion by counsel is legitimate and when it degenerates into abuse.”
Sasser v. State, 494 So.2d 857, 859-60 (Ala.Cr.App.1986) (citations omitted).
After a thorough review of the record on this point and of the above authorities, we conclude that the trial court did not abuse its discretion in overruling Griffith’s objection.
The prosecutor’s initial comments were clearly intended to imply that Griffith had specifically threatened T.J. and that she refused to identify him as one of the robbers at trial as a result of this threat. Because at no point during T.J.’s testimony did she indicate that she felt threatened or intimidated or influenced in her testimony, the trial court properly sustained Griffith’s objection to these specific comments.
However, the prosecutor’s subsequent comments were couched in general terms and constituted a proper inference from the evidence that a person in T.J.’s circumstances might be afraid to testify against the defendant. T.J.’s testimony indicated that she lived in R.V. Taylor Housing Project and that she had seen Griffith in the neighborhood four or five times before the robbery. It is logical and reasonable that jurors, using their common sense, would realize that housing projects are frequently the scene of crime and violence. T.J.’s testimony further indicated that she had heard the robber tell the store manager to give him all the money and that if she did not, he would kill her. It is a fair inference that a young girl growing up in a high crime area who sees someone committing robbery and threatening to kill another person might be afraid to identify that person in a courtroom.
Hence, the trial court properly sustained Griffith’s objection to the prosecutor’s specific comment which implied that Griffith actually threatened the witness T.J., and the court properly overruled Griffith’s objection to the prosecution’s general comment, which implied that an eyewitness to a crime might be reluctant to testify against the perpetrator.
II
Griffith contends that the trial court erred in allowing the State to question him regarding the effect of a guilty verdict on his probation for a prior conviction and to argue this evidence to the jury in closing argument.
On direct examination, defense counsel asked Griffith whether he had been convicted of burglary in 1989, to which he answered affirmatively. Griffith further testified that he “did time” on that charge.
During the prosecution’s cross-examination of Griffith, the following occurred:
“Q And you were convicted of burglary in the second degree?
“A Right.
“Q And sentenced to five years where it was split to where you were supposed to serve two years in the penitentiary, and then you were placed on probation at that time, correct?
“A Right.
“Q So at the time of this robbery you were, in fact, still on probation?
“A Just came home.
“Q And at this time, as of today, you are still on probation?
“A Right.
*320 “Q So if you get convicted of this your probation will be—
“MR. MADDEN: Your Honor, I object. He has admitted to the conviction. It’s only admissible for impeachment purposes. This is all irrelevant.
“THE COURT: Overruled.
“Q So, if you get convicted of this today, your probation in that case will, obviously, be revoked, correct?
“A Right.
“Q And you know that?
“A Right.
“Q As you are testifying here?
“A Right.”
The State may certainly use evidence of a prior conviction for a crime involving moral turpitude to impeach a witness. In this case, Griffith himself first testified as to his prior conviction, thus opening the door for the State to question him further in this regard. The State, moreover, was attempting to show Griffith’s bias by pursuing this line of questioning: the State was attempting to show not only that Griffith would perhaps lie to avoid a conviction in this case but also that Griffith might also lie to avoid revocation of his current probation and reinstatement of his remaining three-year sentence for his previous conviction. See C. Gamble, McElroy’s Alabama Evidence § 149.01 (4th ed. 1991) (impeachment of witness by showing bias).
Hence, because the prosecutor was not attempting to inform the jury of Griffith’s possible punishment if convicted of first degree robbery in this case, the trial court properly allowed the prosecutor to cross-examine Griffith concerning his prior conviction and sentence for impeachment purposes. See C. Gamble, McElroy’s Alabama Evidence § 145.01(9)(f) (4th ed. 1991) (impeachment of witness by proving conviction for burglary, a crime involving moral turpitude).
Because Griffith failed to object to that portion of the prosecutor’s closing argument that addressed Griffith’s prior sentence, this issue is not properly preserved for review on appeal. McCord v. State, 501 So.2d 520 (Ala.Cr.App.1986) (objections cannot be raised for the first time on appeal).
The foregoing opinion was prepared by the Honorable JAMES H. FAULKNER, a former Alabama Supreme Court Justice, and his opinion is hereby adopted as that of the court.
The judgment of the circuit court is affirmed.
AFFIRMED.
All the Judges concur.